SPEAR and RIPLEY *vs.* MYERS.

In an action of assumpsit the declaration contained only the money counts, with a copy of a promissory note annexed, signed by B. and payable to the order of the defendant, and indorsed by him and one K., and a notice that the note was the only cause of action, and that such notice was a bill of particulars of the plaintiff's claim ; *Held,* that the note might be given in evidence under the money counts, and that the bill of particulars did not confine the action to the claim on the note.

As between the indorsee and indorser, a note may be given in evidence under the indebitatus assumpsit ; on the principle that there is a privity of contract between them, created by the statute making notes negotiable.

Parties who receive a note which has been improperly put in circulation, in payment of an existing debt, without parting with any value for it, at the time, or surrendering any securities, are not entitled to hold it, as against the rightful owner.

It is in the discretion of a judge, or referee, to determine when testimony respecting the character of witnesses shall cease, when it may be resumed, and, under some circumstances, which party shall close the examination. And the court will not interfere with the exercise of that discretion, unless it has been abused.

MOTION, by the defendant, to set aside the report of a referee. The facts are sufficiently stated in the opinion of the court.

*S. P. Nash,* for the plaintiffs.

*Cochran & Rathbun,* for the defendant.

*By the Court,* EDMONDS, J.   This is a motion to set aside the report of a referee.   The action was assumpsit.   The declaration contained only the money counts, with a copy of a promissory note annexed, signed by William Baker, and payable to the order of the defendant, and indorsed by him and by one Knapp, and a notice that the note was the only cause of action, and that that was a bill of particulars of the plaintiff's claim.   The first objection made to the plaintiffs' recovery is

Spear *v.* Myers.

that the note could not properly be given in evidence under this declaration.

This mode of pleading was doubtless adopted under section 17 of chap. 386 of laws of 1840, which enacts that in actions on contract upon any written instrument, if the plaintiff shall describe the instrument in his declaration, or annex thereto a copy thereof, unless the defendant shall verify his plea and annex thereto an affidavit of merits, the plea may be disregarded; and under rule 92, which prescribes the form of the affidavit, and declares that the rule shall apply only in cases where it shall appear by the declaration, or the plaintiff's bill of particulars, that the written instrument is the only cause of action. A previous statute, (*Laws of* 1832, *ch.* 276,) authorized the holder of a promissory note, instead of bringing separate suits against makers and indorsers, to include all the parties to the note in one suit, and in such suit to declare on the money counts alone, and when a copy of the note was served with the declaration, to give the note in evidence under those counts. This court has held that this latter statute, and its various provisions, relate only to suits where different parties to a note are sued jointly; that is, not where two or more drawers, or two or more joint indorsers are sued jointly, but where drawers and indorsers, or first and second indorsers, are sued jointly. (1 *Denio*, 105. 4 *Hill*, 35.)

The action here is against one party only, namely the first indorser; and the act of 1832 does not apply to it. The authority to declare on the common counts, and give the note in evidence under them, is to be found elsewhere than in the statute; for the act of 1840 does not give the authority. It merely prescribes what shall be the effect when the note is described in the declaration, or a copy of it annexed thereto.

Now I understand the rule to be that as between the indorsee and an indorser the note may be given in evidence under the indebitatus assumpsit; on the principle that there is a privity of contract between them, created by the statute making notes negotiable; for under that statute the first indorser undertakes to pay the note to his immediate indorsee, or to any other party

to whom it may be transferred.   (*Onondaga Co. Bank* v. *Bates,*
3 *Hill,* 53.)

It is however farther insisted that the bill of particulars confines
the action to the claim on the note, and necessarily makes the
declaration which is in form on the money counts, in fact a count
by the second indorsee against the first indorser, and that on such
a count evidence of money had and received is inadmissible.
This objection, if tenable, would very much enlarge the office
of a bill of particulars, which is merely to confine the plaintiff
to the cause of action, and the amount specified in the particulars,
and not to change the form of the count.   The bill of particu-
lars is regarded as incorporated into, and forming part of, the
declaration.   Hence, in this case its office was to apprize the
defendant that under the money counts the plaintiff would seek
to recover the amount due on that note, and nothing more;
and it would be quite beyond its province to inform the defend-
ant that it had changed the count from a general one on an in-
debitatus assumpsit, to a special one as between indorsee and
indorser.   The ruling on the reference was therefore right in
allowing the note to be received in evidence under the pleadings
in this case.

The next objection to a recovery is that the note was im-
properly put in circulation by Knapp the second indorser.   This
may have been the case; for the evidence is that it was given
to him to see if he could buy goods with it for the maker, and
instead of that he paid it away on a debt owing by himself to
these plaintiffs.   To that it is answered that the plaintiffs were
bona fide holders without notice and for a valuable considera-
tion, and were therefore not affected by this misappropriation.

The cases of *The Bank of Salina* v. *Babcock,* (21 *Wend.* 500,)
*Bank of St. Albans,* v. *Gilliland,* (23 *Id.* 312,) and *Bank of
Sandusky* v. *Scoville,* (24 *Id.* 115,) and the case of *Swift* v.
*Tyson,* (16 *Peters,* 1,) had a tendency to throw some doubts
upon the case of *Coddington & Bay,* (20 *John.* 637,) where it
had been settled that though a bona fide holder of negotiable
paper, who has received it for a valuable consideration without
notice of, or reason to suspect, a defect in the title of the person

from whom it was taken in the usual course of business, is entitled to full protection, yet that where he has received it for an antecedent debt, either as a nominal payment, or as a security for payment, without giving up any security for such debt which he previously had, or paying any money, or giving any new consideration, he is not a holder for a valuable consideration, so as to give him a right to detain it from its lawful owner. These doubts caused the courts to review the question ; and in *Stalker* v. *McDonald*, (6 *Hill*, 93,) it was again fully considered, and the doctrine which had been asserted in *Bay & Coddington*, and had been followed among us for more than twenty years, was reasserted and established as the law in this state. In conformity with that decision have been the subsequent rulings in this court.

In *White* v. *Springfield Bank*, (1 *Barb. Sup. Court Rep.* 225,) all the consideration paid was the delivery up of an unaccepted draft of the person transferring the note in question to the defendants, and which the defendants had discounted. The court held that the situation of the parties had in no respect been changed, and that as the note had been received in payment of a precedent debt, and for no other consideration, the defendants were not holders for a valuable consideration, and entitled to detain the note from the rightful owners. In *Stewart* v. *Small*, (2 *Barb. Sup. Court Rep.* 559,) the defendants had received the note in question from their debtor without notice, in payment of his indebtedness, and had credited him the amount upon their books and upon a draft of their debtor's for a larger amount, which he had drawn upon them and which they had accepted and paid for him. The defendants were, in that case, also held not to be bona fide holders for a valuable consideration, and entitled to protection against the rightful owner.

The case under consideration is of the same character. The plaintiffs were creditors of Knapp, from whom they received the note now in suit. They received this note, and two others, in payment of their debt, gave Knapp a receipt for them, and balanced the account on their books. But they parted with no

value for it ; they gave no money or goods for it.   They surrendered no securities.   They simply received it in payment of a simple contract debt, and are not entitled to hold it against the rightful owner.   The referee, therefore, erred in ruling that " the plaintiffs having taken the note in payment and satisfaction of an account against Knapp, are bona fide holders for a valuable consideration," and his report must be set aside.

Other objections are however made to the report, which it may be well to consider.   One is that the plaintiffs were allowed to prove by Knapp's clerk that the notes which Knapp gave the plaintiffs were credited in Knapp's books to Baker, and that without producing Knapp's books.   It is unnecessary for us to stop and inquire whether this was proper ; because the fact sought to be proved was quite immaterial to the matter in issue, and may therefore be overlooked by us on this motion.   It is doubtless proper, on a trial before a referee, that a party should make his objections in due time, and interpose his exceptions to the ruling of the referee, as thereby the attention of both that officer and of the opposite party may thus be called to the point in time to allow the party to withdraw his obnoxious claim and the referee to amend his ruling or make it clearer, in case he shall think it proper.   But it by no means follows from thence that the mode of reviewing such rulings is as it were on a bill of exceptions where the court may be bound by the strict rule of granting a new trial where there is any error, however immaterial that error may be to the result.   The mode of review is rather in the nature of a motion for a new trial on a case, where the court may not only look at the ruling, as to its fitness per se, but as to its effect on the result, and disregard it if not pertinent or material to that result.   It is in this view of the proceeding before us that I have remarked that it was unnecessary to inquire whether the referee erred in admitting parol evidence of the contents of Knapp's books.   For it was quite impertinent to the issue on trial, what Knapp may have done on his books in his desire to conceal his alledged breach of trust towards the Bakers.

The next objection taken is that the witnesses, the Bakers

Spear *v.* Myers.

and Malburn, having been examined by the plaintiffs to new matter not gone into by the defendant, the plaintiffs had no right to impeach them. It is unnecessary here to inquire how far, and under what circumstances, a party may, by making his adversary's witness his own, deprive himself of the right of impeaching them; because it is very evident here that there was no such examination of the defendant's witnesses by the plaintiffs as to make them their own. It is not simply by a cross-examination that a party makes his adversary's witness his own; but that must depend on the nature of that examination, and whether any new defence, not growing out of the direct examination, has been introduced. (*People* v. *Moore,* 15 *Wend.* 423.)

The next objection is, that after having closed the branch of their case connected with the impeachment of witnesses, the plaintiffs had no right to recur again to impeaching testimony; that the defendant had a right to close on the impeachment, and that the referee erred in refusing to receive testimony offered by the defendant in support of his witnesses. All this is necessarily very much in the discretion of the referee or a judge presiding at the trial, and the court will not interfere with the exercise of that discretion, unless it has been abused. It does not, as is too often supposed, require a large number of witnesses to prove what a man's general character is; and the fact whether it is good or bad by no means depends on the preponderance in numbers on either side. The officer presiding at a trial must therefore necessarily be clothed with authority to say when such a course of inquiry shall cease, when it may be resumed, and under some circumstances, who shall have the right to close the examination.

The plaintiffs introduced five witnesses to impeach the defendant's witnesses, and then rested their case. The defendant did not require the plaintiffs to exhaust their case on this subject; but when the defendant was about proceeding to call his supporting witnesses, on the demand of the plaintiffs the defendant was required by the referee to exhaust his case on that topic. Several adjournments were granted him for that purpose, and

he seems to have been allowed to examine as many as he pleased, without any restriction as to the number. How many he examined the case does not state; but after he closed, the plaintiffs were allowed to examine three more on the subject, and then the referee refused to let the examination proceed any farther. Which party had the greatest number does not appear, and I can not discover in this any improper exercise of the discretion vested in the referee. And as to the right to close on this topic, the defendant might have secured that to himself by a demand on his part that the plaintiffs should close on theirs. This he omitted to do, notwithstanding the hint which he received from the plaintiffs' action in this respect. It is too late for him now to object.

But it is unnecessary to dwell upon the point; because in the view which I have taken of this case in other respects it is quite immaterial whether the defendant's witnesses were worthy of credit or not. For the erroneous ruling to which I have referred, the report must, at all events, be set aside.

Report set aside.

---

Schenectady General Term, May, 1849. *Paige, Willard, and Hand,* Justices.