HIRAM GILBERT *vs.* DUNCAN, SHERMAN AND COMPANY.

1. Parol evidence of the contents of a paper may be given when the paper is not the foundation of the cause of action, but merely relates to some collateral fact.

2. The existence of a paper may be proved by parol as a fact in all cases where its contents are not material to the rights of the parties in the action, or the party proving it does not seek to avail himself of its contents as proof of any fact stated in it, or any obligation created or discharged by it.

3. That promissory notes were given as accommodation paper, may be proved by parol.

4. Where a party furnishes another with letters of credit, and takes as security therefor promissory notes given without consideration, in a suit brought on the notes against the maker, if the defendant prove that the notes were given without consideration, it throws the burthen of proof upon the plaintiff to show that he received the notes without notice that they were accommodation paper, and also to show how much he actually advanced upon the notes.

5. In such case the holder can only recover the amount loaned or advanced upon the notes ; he cannot recover the whole amount of the letters of credit, unless the amount has been actually paid.

---

The action below was brought on two promissory notes, given by Hiram Gilbert, payable to the order of David Rowland. They were given as accommodation notes for the benefit of Rowland, Gilbert having received no consideration for them.

Argued before WHELPLEY, Chief Justice, and Justices OGDEN and VAN DYKE.

*R. Gilchrist, Jr.*, for plaintiff in error, insisted—

*First.* That the notes were given for a particular purpose, and were misapplied by Rowland, and cited *Kasson* v. *Smith*, 8 *Wend.* 437 ; *Edwards on Prom. Notes* 316 ; 3 *Wend.* 415 ; *Brown* v. *Taber*, 5 *Wend.* 566 ; *Denniston* v. *Bacon*, 10 *Johns.* 198.

*Second.* That the plaintiffs were not *bona fide* holders, but held the notes as collateral security, and that if they could recover at all it could only be for the amount actually advanced by them to Rowland. *Manhattan Co.* v. *Reynolds*, 2 *Hill* 140 ; *White* v. *Springfield Bk.*, 1 *Barb.* 225 ; 1 *Sandf. Sup. Ct. R.* 53 ; 2 *Sandf. Ch. R.* 166 ; 6 *Hill* 93 ; 6 *Barb.* 445 ; *Williams* v. *Smith*, 2 *Hill* 301 ; *Allaire* v. *Hartshorne*, 1 *Zab.* 665.

*Third.* The court below erred in permitting the plaintiff to prove by parol that another note for a certain amount had been given up. 1 *Greenl. Ev.*, § 88 ; 9 *Car. & Payne* 338 ; *Buell* v. *Cook*, 5 *Conn.* 206 ; *Chambers* v. *Hunt*, 2 *Zab.* 562 ; 4 *Zab.* 678 ; 3 *Dutcher* 230 ; 3 *Dutcher* 416.

There was no proof that there was anything due from Rowland to Duncan, Sherman & Co. The burthen of proof was on the plaintiffs to show the amount actually advanced on the letters of credit.

*Walter Rutherford*, for defendants in error.

This is an action brought against Hiram Gilbert, to recover the amount of the two following notes :

$918.                          New York, Dec. 1, 1856.

Six months after date, I promise to pay to the order of David Rowland nine hundred and eighteen dollars, for value received.

Payable at Mechanics' Bank, Jersey City.

No.          Due June 1, '4.

HIRAM GILBERT.

(Endorsed)—David Rowland.

$1464.28.          New York, 9th Mch., 1857.

Six months after date, I promise to pay to order of David Rowland fourteen hundred and sixty-four .28 dollars, for value received.

Payable at North River Bank.

No. 246.   Due Sept. 11.

HIRAM GILBERT.

(Endorsed)—David Rowland, for E. H. Gouge, Atty.— Protested for non-payment, Sept. 13th '57.—Geo. R. Leete, N. P.

The notes were obtained from Hiram Gilbert by David Rowland, with the understanding that they should be discounted at the Grocers' Bank and the Artisans' Bank, in New York, for his own benefit. Rowland was in the habit of obtaining notes made by Gilbert, for Rowland's accommodation, to be discounted. Rowland, on May 20th, 1856, obtained from Duncan, Sherman & Co., a letter of credit on George Peabody, of London, for £2000, on the agreement with Duncan, Sherman & Co., that he should keep deposited with them bills receivable to the amount of the letter of credit; that he should deposit new bills receivable when the old ones were withdrawn.

The defence to the action is as follows :

1st. That the $1464.28 note was obtained by Rowland, and given to Duncan, Sherman & Co. to take up the $918 note.

2d. That these notes were misappropriated by Rowland.

3d. That Duncan, Sherman & Co. are not holders for value.

By stipulation between the attorneys, there is no objection as to the parties to the suit, and the law of New York governs the contract.

As to the first objection, the jury have found upon the evidence, as a fact, that Rowland did not obtain the $1464.28 for the purpose of taking up the $918, and that it was not given to Duncan, Sherman & Co. for that purpose.

As to the second objection, that these notes were misapplied by Rowland.

I. Hiram Gilbert has stated, under his own signature, that these notes were not accommodation notes, but given for value received. Such a statement, when acted upon by Duncan, Sherman & Co., in good faith, operates to estop the party giving it from falsifying his own statements. *Mechanics' Bank of Brooklyn* v. *Townsend*, 29 *Barb*. 569.

1. No man, as against an innocent person, can take advantage of his own fraud: so far from being in such case a defence, the fraud would itself, if any loss were sustained, be a positive cause of action entitling the injured party to equivalent in damages.

2. Parol evidence cannot be received to control the legal import of a known commercial instrument. *Hogg* v. *Smith*, 1 *Taunt. Rep*. 347.

3. When the operation of a contract is clearly settled by general principles of law, it is taken to be the true sense of the contracting parties, and it is against established rules to vary the operation of a writing by parol proof.

There is no ambiguity in these notes which requires explanation; upon their face they are given for value received, and the parol proof that they were not given for value received, but that they were accommodation notes given without value, goes to alter in a very material degree their operation and effect. Kent, C. J., *Thompson* v. *Ketcham*, 8 *Johns. Rep*. 147.

II. These notes have not been misappropriated. They were obtained by Rowland voluntarily from Gilbert, with the understanding that they should be discounted in the Grocers' and the Artisans' Banks for Rowland's own benefit. Gilbert was in the habit of giving notes to Rowland for his accommodation.

1. The object of obtaining notes to be discounted is to raise money upon them. Rowland, by depositing these

notes with Duncan, Sherman & Co., raised money in England, where he wanted it for his own benefit.

2. It does not appear that Gilbert had any interest in having them discounted in the Grocers' and the Artisans' Banks, or that the use which Rowland should make of the money was in any way important to him. *Mohawk Bank* v. *Corey*, 1 *Hill's Rep.* 518.

3. Although there was an understanding that these notes should be discounted in the Grocers' and Artisans' Banks, there was no agreement to that effect. Gilbert has no interest in that question : so far as appears, he would just as readily have lent his note to be deposited with Duncan, Sherman & Co., as to be discounted in these banks. Within the proper legal sense of the term, there has been no misappropriation of these notes from the purpose for which they were made.

4. A person who voluntarily entrusts another with his name, to be used for his exclusive benefit, cannot object to any legal use made of it upon the ground of a private restriction upon his authority, of which the party dealing with the other has no notice. *Seneca County Bank* v. *Neass*, 3 *Coms.* 444.

5. The general doctrine on this subject, and the reasons on which it is founded, are stated by Shaw, C. J., in *Androscoggin Bank*, v. *Kimball*, 10 *Cush.* 373, as follows : The rule is very clear, that if one party, intending to accommodate another, signs his name to a blank paper, he authorizes the other to whom he delivers it, and for whose accommodation it was made, to fill up the blank; and the filling up, being done by his authority, is his act, and he is bound by it. *Violet* v. *Paton*, 5 *Cranch* 142 ; *Russell* v. *Langstaff*, 2 *Doug.* 514 ; *Collis* v. *Gummetts*, 15 *H. B.* 31 ; *Montague* v. *Perkin*, 22 *Eng. L. & Eq. R.* 516.

The Supreme Court of the United States concurs in this principle, and I think it applies with even more force when it was done for his own benefit, as in this case. *Goodman* v. *Simonds*, 20 *Howard* 361.

As to the third objection, that Duncan, Sherman & Co. are not holders for value—

III. The giving of this letter of credit by Duncan, Sherman & Co. to Rowland was a sufficient consideration to make them *bona fide* holders of these notes for value.

1. Considerations founded upon reciprocal promises of the parties are of common occurrence in business, and bills and notes supported by such considerations have always been held valid.

2. It is upon this principle that cross-notes or acceptances for mutual accommodation have been upheld whenever they have come before the courts. They are respectively considerations for each other. *Rice* v. *Mather*, 3 *Wend.*; *Bank of Salina* v. *Babcock*, 21 *Wend.* 449; *Cameron* v. *Chappele*, 24 *Wend.* 94; *Dowe* v. *Schutt*, 2 *Denio* 621; *Davis* v. *McCready*, 17 *New York* 232.

3. If a man gives his acceptance to another, that will be a good consideration for a promise or another bill, though such acceptance be unpaid. *Cameron* v. *Chappele*, 24 *Wend.* 95.

4. The surrendering, by Duncan, Sherman & Co. to Rowland of other notes, made them holders for value of these notes upon which this suit is brought. Testimony of G. H. Leete.

The opinion of the court was delivered by

WHELPLEY, C. J. The action in the court below was upon two promissory notes, made by Gilbert, payable to David Rowland, and by him endorsed to the plaintiffs—the first, dated December 1st, 1856, for $918; the second, for $1464.28, dated 9th March, 1857. They were dated at New York, and there transferred to the plaintiffs below. Both notes were made by Gilbert, for the accommodation of Rowland: such was the evidence at the trial, and that was not controverted.

There was no evidence that Duncan, Sherman & Co.

knew, at the time of their transfer to them, that the notes were not business paper.

At the trial, the defendant, Gilbert, set up, among other defences, that, at the time the last note was transferred to Duncan, Sherman & Co., they agreed to give up to Rowland the first note. On this point the evidence was conflicting, and the court charged the jury that, if such was the agreement, the plaintiffs could not recover upon the first note. The verdict was for the amount of both notes. For the purposes of this case, we must assume, such having been the finding of the jury, that no such agreement was made, unless that finding may have been produced by some erroneous ruling of the court bearing upon that issue.

The evidence on the part of Gilbert tended to prove that, at the time the second note was transferred, Duncan, Sherman & Co. agreed to give up the first note. The evidence on the part of the plaintiffs, upon which the jury must have rested their verdict as to this point was, that they never agreed to give up the note for $918 ; that the note for $1464.28 was not passed to them to take up the note for $918, but another note of Gilbert's passed by Rowland to them for $1140.20. To the admission of parol evidence of the existence and amount of this note the defendant's counsel objected, unless proof of its loss or destruction was first made, assigning as the ground of the objection, that it contravened the rule excluding parol evidence of the contents of written instruments.

This is one of the errors assigned.

The note was not an agreement between the parties. The plaintiffs in no wise rested their claim upon it ; it was entirely collateral to the issue ; indeed, the evidence was immaterial to the issue, in this sense, that the plaintiff's proof was complete, for all the purposes of the case, without proof of the existence or the amount of the note. The defendant had proved by one witness an agreement with the plaintiff's clerk to give up the note for $918 ;

the plaintiffs' clerk denied the agreement to give up that note ; and further said, the note which he did agree to give up, was for a different amount, for $1140.20.

It is difficult to lay down any rule which will accurately define in what cases it is not necessary to produce a writing as the best evidence. There is much conflict in the cases upon this subject, arising more, perhaps, out of the application of the rule to differing cases than as to the rule itself. All the cases recognize the principle that, where the contents of the instrument are required, it must be produced, or its absence excused.

Savage, C. J., in *McFadden* v. *Kingsbury*, 11 *Wend.* 667, said : " I have always understood the rule to be, that parol evidence of the contents of papers may be given when they do not form the foundation of the cause, but merely relate to some collateral fact." The judgment of Parker, C. J., in *Tucker* v. *Welsh*, 17 *Mass.* 175, proceeds also on the ground that the contents of a paper collateral to the issue may be proved by parol.

Mr. Greenleaf, also, in his work upon Evidence, paragraph 89, adopts the rule as enunciated by Chief Justices Savage and Parsons, citing as authority the cases just referred to. The author of the note in *Phillips' Ev., Cow. & Hill's Notes*, 2 *vol.* 398, after an elaborate examination of these cases, and others cited by him as maintaining the opposite doctrine, says : " We know of no ground, either upon principle or authority, upon which the doctrine can be maintained. Where, however, the contents are immaterial, and the question is one of mere identity, as in the present case, no reason is perceived why the production of the instrument should be required before the witness is permitted to allege its existence."

To enforce such a rule in every case would only serve to embarrass the administration of justice. If the statement of plaintiff's clerk was true, how could the plaintiff be aware that the production of the note for $1140.20 would be of any avail ?

In general, the principle adopted seems to be, that the existence of the paper may be shown by parol evidence for many purposes, when the existence of the paper is not shown for the purpose of maintaining or destroying any right involved in the action, but as a fact or circumstance collateral to the questions at issue. *Lambe* v. *Moberly*, 3 *Monroe* 179; *Boone* v. *Dyker, Ibid.* 331; *United States* v. *Parker*, 3 *Day's Rep.* 284.

The rule of evidence, the infringement of which is assigned for error, is that requiring the best evidence to be given the nature of the case admits. It is said the existence of such a note can be best proved by its production. That may be the case—it would so seem. But the cases already cited show that it is impossible to adhere to this rule. For instance, a party proceeds, upon a trial, to give parol evidence of an agreement; the adversary objects that this cannot be done, and by cross-examination shows that the agreement was reduced to writing, that there was such an agreement in writing; it was never doubted that this may be done, and yet, if this rule is of universal application, this could be done only by the writing itself. The rule must therefore have some limitation. No other rule can be adopted in practice than to permit the existence of a paper to be proved by parol as a fact in all cases where its contents are not material to the rights of the parties in the action, or the party proving it does not seek to avail himself of its contents as proof of any fact stated in it, or of any obligation created or discharged by it.

A fact stated in a writing may be proved *aliunde*, if it had existence independent of the paper as a payment of money, although a receipt of release has been given.

I entirely agree with the doctrine stated in the notes to Phillips' Evidence, that where the statements of a writing are desired as evidence that such statements were made in writing, the writing, as the best evidence, must be produced, even if these statements are not pertinent to the main issue between the parties.

The evidence was properly received by the judge. That the notes were accommodation paper was competent to be proved by parol.

In the further consideration of the case, it may be assumed that both notes stand on the same footing; if the plaintiffs were entitled to recover upon one, they might upon both.

On the 20th of May, 1856, Rowland, then in business in the city of New York, desired a credit with George Peabody & Co., of England, for £2000, and applied to Duncan, Sherman & Co. for it. They gave it to him. The credit was issued on the personal liability of Rowland and the deposit of securities, of which the notes in suit were a part, or had been substituted for those withdrawn by Rowland.

The letter of credit bound Duncan, Sherman & Co. that George Peabody & Co. should accept drafts drawn by Rowland, or his written order, at three months, for any sums not exceeding in all two thousand pounds sterling at any one time uncovered by remittances in the hands of the drawees, and that the bills drawn under it should be duly honored at Peabody & Co.'s counting-house. The credit was to remain in force until revoked.

Rowland agreed to provide funds with Duncan, Sherman & Co., New York, one month before the maturity of the drafts drawn under the letter of credit, and to accept and pay the drafts of Duncan, Sherman & Co., or George Peabody & Co. in their favor, payable three months after the date of their acceptance, as security for the same.

The defendants insisted, at the trial, that the notes were accommodation paper, loaned by Gilbert to Rowland, on his promise to take care of them; that the agreement between Gilbert and Rowland was, that Rowland should raise money upon them, by having them discounted at the Artisans' Bank, in New York; and that the larger note had been lent for the express purpose of taking up the smaller; that the transfer of

them to plaintiff was a misappropriation of them, which, if they had notice of the agreement between Gilbert and Rowland, barred their recovery. The plaintiffs could not recover upon them at all, unless they were *bona fide* holders of them for a valuable consideration passing at the time of their transfer, something more than a precedent debt, without notice of the fraud ; that the recovery of the plaintiffs upon them must be limited to the amount of the balance due from Rowland to Duncan, Sherman & Co. ; that the burthen of proof was upon the plaintiffs to show how much that balance was.

These are the main points made by the bills of exceptions, and for convenience I propose to consider them, without regard to the form in which the assignments of error present them, only noticing such as are necessarily involved in the decision of the case.

A party loaning his note to another without consideration has a right to prescribe the use which shall be made of it, and to limit its negotiability to certain persons, if he sees fit, and any departure from the mode and manner of transfer prescribed, or any transfer of it not in accordance with the agreement between the lender and borrower, is a misappropriation of the note, which renders it invalid in the hands of one who takes it with notice of the agreement as to the use to be made of the note, or if without notice, is not a *bona fide* holder for a valuable consideration. *Edwards on Promissory Notes* 316.

The mere fact that the note was lent by the maker to the endorser, even if known to the endorser at the time of transfer, furnishes no defence if the transfer was for a valuable consideration against a recovery upon the note, although it may affect the amount to be recovered. If the endorser has pledged the borrowed note as collateral security for a smaller loan or for future advances, and the transaction does not amount to a sale of the note for a full consideration, the pledgee can only recover the amount loaned, the debt for which the note was pledged as collateral, unless there be some person other than the defend-

ant entitled to receive the surplus.  *Allaire* v. *Hartshorne*, 1 *Zab.* 671.

The title of the holder, in such a case, is unaffected by the question whether the note is held as a security for a precedent debt, or for advances made at time of transfer, or to be made afterwards.  Any valuable consideration sufficient to support an agreement, to prevent its being *nudum pactum*, will be sufficient to uphold the title of the endorsee either to a partial or total recovery of the amount named in it.  And this is held by the Court of Errors, in Allaire *v.* Hartshorne, to be the law of this state, even when the defence is something beyond mere want of original consideration, and amounts to a misappropriation, provided, of course, the holders took it without notice of the misappropriation.

But the courts of New York have not adopted this doctrine as to the nature of the consideration required to support the *bona fide* transfer of a misappropriated note.  They have adopted the rule of a court of equity as to what constitutes a *bona fide* purchaser for value, and hold that the true owner of a misappropriated note may reclaim his property in it, unless the actual holder has parted with something of value on its transfer to him.  *Stalker* v. *McDonald*, 6 *Hill* 93 ; *Manhattan Co.* v. *Reynolds*, 2 *Hill* 140 ; *Furness* v. *Gilchrist & Co.*, 1 *Sand. Sup. C. Rep.* 53 ; *White* v. *Springfield Bank*, 1 *Barb.* 225 ; *Spear* v. *Myers*, 6 *Barb.* 445 ; *Stewart* v. *Small*, 2 *Barb.* 559 ; *Edwards on Prom. Notes* 316, 320.

This, according to the treatise just cited, is the law of New York, and in this the *lex loci contractus*, not the *lex fori*, must control.

But if the notes were transferred upon an agreement to advance money for Gilbert's use, and the money was advanced, or what is equivalent, if Duncan, Sherman & Co. become bound to their correspondent for advances made in London, or if they become responsible upon commercial paper for the benefit of Rowland, that would be a sufficient consideration, even under the rule prevail-

ing in New York. So if these notes were, at the request of Rowland, substituted for other notes released at the time, that would be a sufficient consideration to support the plaintiffs' title to them, if at the time of the substitution the plaintiffs were liable for money advanced under the letter of credit, or which the plaintiffs were by it bound to advance.

I cannot agree to the position of defendant's counsel, in his request to the judge to charge the jury that it was important whether Rowland was indebted to plaintiffs at the precise moment when these notes were transferred or not.

To that part of the charge of the court below I agree, in which it is said that one promise is a good consideration for another, and that if the notes were transferred in consideration of the letter of credit, which I presume means the issue of it, that was a valuable consideration; but to the residue of that part of the charge I cannot agree, that it was incumbent upon the defendant to show that Rowland had not used the letter of credit, or that the plaintiffs had failed to procure or meet the credit—in effect, that it was for defendant to show that Rowland was not indebted to Duncan, Sherman & Co. upon that letter of credit.

This presents the question, who held the affirmative on this issue? It must be borne in mind that, in determining this, we must assume that the notes had been transferred, without right to do so, by Rowland to the plaintiffs, because this part of the charge was upon that hypothesis; if they were not misappropriated, it was not incumbent on the plaintiffs to show themselves *bona fide* purchasers, or how much they gave for them; if they were misappropriated they can only hold them so far as they are *bona fide* purchasers for a valuable consideration—they are such *pro tanto* only.

The production of the notes upon the trial was *prima facie* evidence of their title; but when evidence was given

to show that they had been misappropriated, and, as to Gilbert, were without consideration, then it became necessary to prove their title as *bona fide* purchasers for a valuable consideration without notice of the misappropriation. *Monroe* v. *Cooper*, 5 *Pick.* 413; *Woodhull* v. *Holmes*, 10 *Johns.* 231; *Heath* v. *Sansom and Evans*, 2 *Barn. & Ad.* 291; *Conroy* v. *Warren*, 3 *Johns. Ca.* 259.

As soon as the notes were shown to have been lent to Rowland without consideration and misappropriated, it destroyed them as such, until a consideration was shown to have been given for them.

It was incumbent upon the plaintiffs to show what they gave for them, how far they were *bona fide* purchasers for a valuable consideration. They could hold the notes only so far as they gave or relinquished value at the time of their transfer. If the extent of their recovery depended upon the extent of the moneys paid, that being the affirmative of the issue, they were to prove the amount.

The letter of credit and the accompanying paper show that it was issued on Rowland's credit and that the notes pledged were collateral to the amount of acceptances as security for the same. The letter of credit was not for this purpose considered as creating any debt; that was done by the acceptances. Whether the whole money would be advanced was, when the letter issued, uncertain. The plaintiffs, in a suit against Rowland, could have claimed only the advances made under the letter of credit, commissions and expenses, not the whole £2000.

By their own agreement, these notes were mere securities for Rowland's debt. Allaire *v.* Hartshorne, and cases there cited.

They were bound to make the same proof against Gilbert, who, as maker of the misappropriated note, stood in no worse position than a mere surety.

Without examining the other errors assigned, I am of opinion that for this the judgment should be reversed.

VAN DYKE, J., (dissenting.) The plaintiffs sue on two promissory notes—one for $918, and the other for $1464.-28—both given by the defendant to David Rowland, and by him endorsed to the plaintiffs.

The signatures on the notes were admitted at the trial, and the partnership of the plaintiffs duly proved.

The first defence raised to these notes is, that they were given without consideration between the original parties; in other words, that they were simply borrowed of the defendant by Rowland, the payee, for his own accommodation, to be discounted at certain banks, and that the defendant was in no way benefited by or interested in the proceeds thereof.

It is also insisted that the notes were diverted from their original intention or purpose by Rowland; for that, instead of their being discounted at the banks mentioned for Rowland's benefit and accommodation, they were in fact deposited with the plaintiffs as security for a letter of credit issued or emitted by them to Rowland, by which they made themselves liable on his account for $10,000. These facts seem all to be very well established by the evidence of Rowland himself and his clerk, whose testimony was offered in the form of depositions; but do they furnish any defence whatever to this action, inasmuch as it does not in any way or manner appear that the plaintiffs had any knowledge or notice whatever that the notes were either borrowed or given without consideration, or that they were to be discounted at any particular bank or banks? They were not made payable at either of the banks mentioned.

If the defendant can avoid the payment of these notes for the reasons assigned, then there is no faith or credit to be given to or placed in commercial or other negotiable paper, and every person who takes it, even before any dishonor or suspicion is placed upon it, and no matter how good the faith in which he took it, nor what the

consideration was which he paid for it, is liable to be met, when he attempts to collect it, by every possible private arrangement or understanding which may have been made between the original parties, on purpose, it may be, to defeat it. And this notwithstanding the party who takes it had no knowledge or suspicion of any such state of things, notwithstanding a full consideration has been paid for it, and notwithstanding it is declared on the face of the paper that it is given for "value received." No bank could safely discount such paper, no one could safely purchase it, no one could safely take it as collateral security. But such is very clearly not the law, and it seems like a useless effort to cite authorities to show its incorrectness. Every person who gives his promissory note makes it negotiable, and declares on its face that he gave it for value received, is bound to pay it in the hands of any person who took it in the ordinary way of business before it was due, without notice or knowledge of there being any difficulties or conditions about it, and who paid for it a good consideration; and before a party giving such a note can defeat it in the hands of any such holder he must prove affirmatively not only that it was given without consideration, or that it was misapplied, but he must also prove either that the holder took it after it was due, and consequently under dishonor, or that he knew of the want of consideration or misapplication when he took it, or that he obtained it without consideration. This part of the defence, therefore, admitting it to be all true, cannot be of any avail to the defendant, unless it be true, as is contended, that the taking these notes as a security against the letter of credit, which the plaintiffs issued to Rowland at the time of receiving them from him, was a taking without consideration, or for some other reason was unlawful. But there can be nothing in this view of the case; for when these plaintiffs advanced to Rowland their absolute responsibility to the

extent of $10,000 they were advancing to him a very valuable consideration, as well as a lawful one, to secure them, for which they had a perfect right to take the notes in question, supposing them to belong to Rowland. The consideration was valuable. It was in the way of their business, and is one which the law will sustain.

But it is contended that as these notes were merely deposited or pledged to the plaintiffs to protect or indemnify them against their liability on their letter of credit, they cannot be prosecuted or recovered on, although past due, unless the plaintiffs go further, and show that they have had to pay in behalf of Leonard the whole amount of their letter of credit, or some part thereof, or, in other words, that these notes cannot be recovered on unless the plaintiffs have had money to pay for Rowland on their letter of credit, and that the burthen of proof is upon them to show, before they can recover, that they have at least paid so much on the letter of credit as that the money due on these notes is needed by way of indemnity to make them whole. There seems to be some plausibility about this idea, but I cannot think it is sound. It is true, if it appeared affirmatively that this letter of credit had been retained without having been used at all, it should defeat this suit; and so if it had been used to the full extent of it, and the plaintiffs had been put in funds by Rowland to meet all such liability, and so also if the letter had been returned after having been used only in part, and the plaintiffs had been put in funds to meet so much as had been so used—in all these cases there should be no recovery. But in the case before us the plaintiffs, in the first instance, gave their unqualified guarantee in writing for Rowland, to be used in Europe at his pleasure, and by which they were to be, or might become actually bound at any time to the amount of ten thousand dollars.

*Prima facie* they become liable at once for the whole amount of the letter, and if they held undoubted security for a like or greater amount as an indemnity they could

not to be compelled to surrender a dollar of it until it should be proved by the party making the pledge of securities that that liability had been either removed or reduced. The liability for the whole letter of credit being once established by its delivery to Rowland, the presumption of law is that such liability continues until those who issued it have paid the whole that can be drawn by virtue of it, and whoever attempts or desires to avail himself of the fact that the whole letter has been returned unused, or that a part only has been used, or that such amounts as the drawers have had to pay thereon has been refunded to them, must prove it by some affirmative evidence.

The defendant put upon the witness stand a witness who might in the nature of things have told us all about the matters—I mean Mr. Rowland himself. He was the person to whom the letter was issued and delivered. He certainly could have told us whether it had been used or not, and if not actually used, he could have told us to what extent it had been used; or if he owed the plaintiffs nothing on or in consequence of that letter of credit which could at all justify their attempt to enforce the security which he gave them, he certainly could have said so. But the defendant, although relying on this trial of defence, did not ask him any question on the subject, and the plaintiffs, not anticipating such defence, asked him nothing on the subject, and we have no proof on the point either way.

The plaintiffs, being the lawful holders of the notes, were not bound to prove anything whatever beyond the due execution of them and their own existence as partners. All else that they could possibly be called on to prove would be to rebut or overcome something that had been offered by the defence. Nothing of the kind now under consideration was offered by the defence, and consequently there was nothing of the kind for the plaintiffs to rebut or overcome, while the defendant, who in giving the notes made an unqualified promise to pay them to

Gilbert v. Duncan.

Rowland or to these plaintiffs, or to any one else who should be the legal holder, and that they were given on consideration and for value received, and who seeks now to avoid the payment of them on the ground that certain things have happened concerning them by which his liability to pay has been destroyed, is bound to prove before the court and jury every one of those things, or every one of those facts on which he relies for defence in this action. The plaintiffs, as has been shown, are not bound to disprove them before they are presented. They do not need or desire them in evidence; but as the defendant desires to avail himself of them, but has entirely failed to show their existence by proof, they are not before us, and having failed to establish the facts necessary to make out a defence, the defence itself must fail.

As before remarked, we have seen this letter of credit issued—we have not seen it returned. The presumption is it is still outstanding. It is also quite manifest that the matters between the plaintiffs and Rowland have not been settled; they have the right, therefore, not only to retain the securities which they hold, and assuming, as they have a right to do, that they are *business* and not *accommodation* notes actually belonging to Rowland, they had the right to receive the money due on them at maturity, if the defendant had been ready to pay it and take them up. They had the right, also, if not paid at maturity, to collect them in any lawful way; and assuming the notes to be business notes, and belonging to Rowland, they were bound to exercise due diligence in such collection; for any unreasonable delay in so doing, by means of which the amount should be lost by any legal bar, or by the failure of the defendant, would be such neglect on their part as to cause such loss to fall upon the plaintiffs themselves, as between them and Rowland.

Now, while it is very true that a defendant *might*, in the nature of things, have proved enough to have defeated this suit, yet he cannot do it by simply showing

that the notes were borrowed, or that they were not used as originally intended, and then stop; for the proof of these things would not prove that the plaintiffs have knowledge of them, or that they have paid no consideration for them, nor would they show any other defect in the plaintiff's right to recover on them. But the defendant must go further, if he would successfully resist the claim, and in addition to showing the notes to have been borrowed or misapplied, he must also show that the plaintiffs knew it, together with every other fact and circumstance necessary to enable him to make his defence complete. If he do not do this his defence must fail. It is not for the plaintiff to disprove them in the first instance. The defendant, therefore, not having shown any sufficient reason why these notes should not be recovered upon, and no such evidence being before us, the defence must fail.

It is also insisted on, as a part of this defence, that the condition on which the note for $1464.28 was deposited was that the note of $918 was to be given up. Such is the evidence of Mr. Gouge; but this is denied in the evidence of Mr. Leet, who says it was not the note for $918 that was to be thus surrendered, but another note of different amount, and which he says was given up according to agreement. It thus became a question of disputed fact, which the judge very properly submitted to the jury, who found that the note for $918 was *not* to be surrendered, and they accordingly included it in their verdict. With the direction of the court and the action of the jury in this respect I see no reason to interfere.

Exception is taken also to the decision of the court in admitting the verbal evidence of Leet, which went to show that the note which was to be surrendered, and which was in fact surrendered when the note for $1464.28 was deposited, was a note for $1140.20, and not the note for $918. Gouge had testified that the note for $918 was to be given up when the one for $1464.28 was deposited, which he said had not been done. Leet was then recalled

to prove that it was not the note for $918 that was to be then surrendered, but another note of $1140.20. This evidence was objected to, for the reason that the note thus referred to was not itself produced; but the objection was overruled and the evidence admitted, and I think properly, for the great, if not the only point, as well as the effect of the evidence, was to show that it was not the $918 note, then in controversy, that was to be surrendered, but *another* note, not *that one*, and it was totally immaterial whether he mentioned the amount of such other note or not; all that was important was to show that it was not the one then in suit, as the other witness had said, and I do not see how the defendant could have been affected, one way or the other, whether the witness gave any of the contents of the note or not.

I do not see, therefore, that the judge at the trial below, in any of the decisions that he made, or in the charge that he gave to the jury, or in the omission to charge as desired by the defendant's counsel, committed any error, and think that the judgment of the Circuit Court should be affirmed.

REVERSED, 5 *Dutch.* 521.