## Curry, Dismukes & Co. *v.* George C. Kurtz.

1. Bills of exchange: action by acceptor against drawer.—The foundation of a claim of an accommodation acceptor of a bill of exchange against the drawer is, that the bill has been paid according to order.
2. Action: bill of particulars: bills of exchange.—In an action by an accommodation acceptor against the drawer, the bill must be so described in

Curry, Dismukes & Co. *v.* Kurtz.

the account sued upon, as to identify it, and be produced upon the trial, or its absence satisfactorily accounted for, by its loss or otherwise.

3. BILLS OF EXCHANGE: ACCOMMODATION ACCEPTOR MUST SHOW THAT THE BILL HAS BEEN IN CIRCULATION, AND THAT THE INDORSEMENTS ARE GENUINE.—The mere production of a bill of exchange by an accommodation acceptor, is not even *prima facie* evidence that it has been paid by him, unless it be shown that it has been in circulation after acceptance, and that the indorsements relied upon as evidence of circulation, are in the handwriting of parties authorized to make them, and there can be no presumption that the indorsement is the handwriting of such party. (2 Stark. Ev. 240; Chitty on Bills, 649.)

4. SET-OFF: BILL OF PARTICULARS.—The statute entitles a plaintiff to notice of the nature and particulars of a set-off; and any evidence, the nature and particulars of which are not sufficiently indicated in the account filed, so as to give the plaintiff such notice as will enable him to prepare for his defence, would operate to his surprise, and is inadmissible.

5. EVIDENCE: DECLARATION OF COPARTNERS.—The declarations of one copartner, made after the dissolution of a firm, in relation to facts which took place during the existence of the copartnership, in the regular course of business of the firm, and not creating a new liability, are admissible against his associate. And especially is this the case where the declarations are made by a partner, who is also a party to the suit. (3 Kent's Comm. 51; 1 Greenl. Ev. § 112.)

6. NEW TRIAL: SURPRISE.—Surprise which results from a mistake as to what is legal evidence, is no cause for granting a new trial.

IN error from the Circuit Court of Winston County. Hon. Robert C. Perry, judge.

This is an action based upon an account to receive moneys advanced by the plaintiffs in payment of bills of exchange, by them as accommodation acceptors, and other moneys advanced.

The defendants pleaded, 1st, the general issue; 2d, payment in the usual form, to which was attached the following account.

ACCOUNT OF PAYMENT.

Paid to plaintiffs, 22d March, 1851, . . . . $6000
    "        "        "         . . . . $6000
    "        "        "         . . . . $6000

Other facts in the cause are sufficiently set forth in the opinion of the court.

*Freeman* and *Dixon*, for plaintiffs in error, filed an elaborate argument, and concluded,

1st. That it was not necessary to prove the handwriting of the payer of a bill of exchange and other indorsers, or that the bill was in circulation after its acceptance. (Chitty on Bills, title Evidence, 648, 649.)

2d. That the defendants' bill of particulars was too indefinite to admit proof of sales of cotton for defendants at different periods. Hutch. Code, 847, § 61; 2 How. 601; 12 S. & M. 656.

3d. One partner cannot, after dissolution, bind his copartners by acknowledging an account. 3 Johns. R. 536; 15 Johns. 423.

*J. J. Beauchampes*, for defendant in error.

1st. The mere production of a bill of exchange will not afford even *prima facie* evidence of payment, without showing that the bill has been in circulation since the acceptance. 2 Stark. Ev. 169; 3 East, 169; 3 B. & C. 669; 5 D. & R. 603; 2 Greenl. Ev. § 527, p. 498; 2 Camp. 439; 3 Esp. 196.

2d. The admissions of one partner, made after the dissolution, in regard to business of the firm previously transacted, has been held to be binding on the firm. 1 Greenl. Ev. § 112, p. 138, and note 2; Story on Contracts, §§ 360, 368, 385, 386; Collyer on Part. 233, 406, 453, 232, note; Chitty on Bills, 618, note 2; 3 Kent's Com. 51, Lecture XLIII; 6 Greenl. R. 41; 4 N. H. Rep. 246; 8 Metcalf R. 100, 434; 11 Pick. 400.

3d. When it appears that justice has been done, and that another trial would not be likely to change the result, a new trial will not be awarded by the appellate court. *Jenkins* v. *Whitehead*, 1 S. & M. 157; *Leflone* v. *Justice*, 1 S. & M. 381; *Bohr* v. *Steamboat Baton Rouge*, 7 S. & M. 715; *McMullin* v. *Mayo*, 8 S. & M. 298; *Fisher* v. *Leach*, 10 S. & M. 313; *Prichard* v. *Myers*, 11 S. & M. 169; *Wright* y. *Alexander*, 11 S. & M. 411; *R. ith* v. *Agricultural Bank*, 12 S. & M. 161; *Wilkinson* v. *Griswold*, 12 S. & M. 669; *Magee* v. *Harrington*, 13 S. & M. 403; *Sampson* v. *Bowdon*, 23 Miss. 524.

4th. Courts of justice have constantly refused to disturb judgments by granting new trials, when the alleged injustice of the judgment is the result of the palpable inattention and negligence of the party or his counsel. *Green* v. *Robinson*, 3 How. 105;

*Bohr* v. *Steamboat Baton Rouge,* 7 S. & M. 715; *Wright* v. *Alexander,* 11 S. & M. 411; *Routh* v. *Agricultural Bank,* 12 S. & M. 161.

HANDY, J., delivered the opinion of the court.

This action was brought by the plaintiffs in error, who were commission merchants, to recover certain moneys advanced by them as accommodation acceptors of certain bills of exchange drawn upon them by the firm of George C. Kurtz & Co., of which the defendant was a member, and commissions thereon, and for other moneys paid on account of that firm, amounting to the sum of $4604 21. The defendant pleaded, 1st, the *general issue;* 2d, *payment,* accompanied by an account against the plaintiff for three several sums of $6000, each paid to the plaintiffs on the 22d March, 1851.

The verdict and judgment being for the defendant, the plaintiffs took a bill of exceptions to sundry rulings of the court upon the trial, and to the overruling of their motion for a new trial; and, upon these exceptions, the case is brought here for review.

The first exception taken was to the exclusion of certain parts of the deposition of the witness Buck, offered by the plaintiffs to prove their account. This account, which was the bill of particulars filed with the declaration, having been read to the jury, the witness deposed as to the several items stated in it. He stated that a majority of the original entries of the account were in his handwriting, and that "they were made with a firm belief that they were correct." As to the first item, he stated, in substance, that he had no knowledge in relation to it, but that it was upon an order of the defendant's partner on file. This was insufficient to prove the item without the production of the order, or showing that it was lost.

He further stated that "the second charge of draft of $2000 was paid by the plaintiffs to A. H. Jones, the indorser." This draft was not produced with the deposition, nor offered in support of it; there was no description of it, either in the bill of particulars or in the deposition, as to date, maturity, or parties, which would designate it as the paper upon which the claim was founded, and bar any future recovery upon it. For want of production or iden-

tification of the bill, then, this part of the deposition was properly excluded.

The same reason justifies the exclusion of so much of the deposition as relates to the payment of the drafts to Calloway and Cunningham, and others, which were not produced or described, nor their absence accounted for.

It is true, that in the subsequent progress of the cause, bills substantially corresponding with those mentioned in the bill of particulars were produced and offered in evidence. But, they were not offered in connection with this deposition, nor in answer to the objection to its introduction, and the objection to the deposition had therefore to be determined by the statement of the deposition and the contents of the bill of particulars. Had the bills also been offered in answer to the objection, there appearing to be a substantial correspondence between them and those referred to in the deposition and in the bill of particulars, it would have been proper to admit the deposition, and leave the question of identity to be settled by the jury. But this course was not pursued, and, as no bills were shown or identified, the deposition was properly excluded.

As to the charge in the account, " Cash handed you by Jones," the statement of the deposition was, that " it was taken from a list of debtors, to cash sent down by Jones, as was his custom to send statements of amounts of cash advanced at Macon." Jones was one of the plaintiffs in this action, and had also been a partner of the defendant. The alleged advance of money to the defendant's firm must, however, have been made and returned by him, as a member of the firm of the plaintiffs, and the mere statement of it in that capacity would not, of itself, bind the defendant. It does not appear that he acknowledged the advance in behalf of the defendant's firm, or that it was done by the knowledge or consent of the defendant; nor is the list of debtors for cash advanced, stated to have been returned to the plaintiffs' firm by him, produced or its statements shown. The evidence was, therefore, incompetent to charge the defendant, and was properly excluded.

The next exception refers to the exclusion of the bills of exchange offered in evidence by the plaintiffs, in support of the account sued on. The defendant objected to the admission of these bills, unless the plaintiffs proved the signatures of the indorsers, or showed that they had been in circulation after acceptance by the plaintiffs, the

plaintiffs offering to prove the signatures of the drawers, and that the plaintiffs accepted the bills for the accommodation of the drawers; and this objection was sustained, and all the bills excluded.

The first of the bills offered was payable to A. H. Jones, whose signature as indorser was proved, as well as that of the drawers. This was sufficient evidence of circulation of the bill to entitle the plaintiffs, as its acceptors, to produce it, and offer it in evidence to show that it had been paid by them. And, consequently, it was error to exclude this bill.

With respect to the other bills, they were all drawn upon the plaintiffs; one being drawn by Kurtz & Co., and there being no indorsement upon it; another being drawn by them, and having the indorsement of the payee and others, but there being no proof of the handwriting of any of the indorsers; and the others being drawn by third persons, and having the indorsements of the payees and other subsequent indorsers, but there being no proof of the handwriting of any of the indorsers. These bills were offered in evidence, for the purpose of showing that they had been paid by the acceptors, unaccompanied by any evidence of their having been in circulation, or by any offer to show that fact, or the fact of direct payment to the payees, by evidence subsequently to be adduced. Under such circumstances, it is clear that the bills were inadmissible.

It is well settled, that the mere production of the bill, by the acceptor, is not even *prima facie* evidence of payment, and that it must be shown that it has been in circulation after acceptance. 2 Stark. Ev. 240 (7th Amer. Ed. 1839). Nor will payment be presumed from a receipt indorsed on the bill, unless it be shown to be in the handwriting of a person entitled to demand payment. Ib. and Chitty on Bills, 649 (9th Amer. Ed.). The mere fact that the bill produced has upon it an indorsement purporting to be that of the payee, is not sufficient to show that it was in circulation after the acceptance; for the indorsement may have been made by the acceptor, and the bill never have gone out of his possession after acceptance, nor been actually paid, or may have been paid under a forged indorsement to another person. The foundation of the acceptor's claim against the drawer is, that he has paid the bill

according to his order; and before he can recover upon the demand, if the question is whether the bill was in circulation, it is incumbent upon him to show that the indorsement relied upon as evidence of circulation, is in the handwriting of the party authorized to make it; and there can be no presumption in such case that the indorsement is in the handwriting of that party.

The next ground of error insisted upon, is the admission of certain accounts of sales, and memoranda of receipts of cotton, on account of the defendant's firm, by the plaintiffs. The objection to this evidence is, that the account filed with the pleas, by way of set-off, gave no notice that such evidence would be offered, and therefore that it was inadmissible.

We think that the accounts and memoranda were improperly admitted under the state of pleadings. They were offered as a set-off to the plaintiffs' claim, and nothing was shown either in the pleas or in the account filed with them, by which the plaintiffs could have had any notice of the nature or particulars of the claim relied upon as a set-off. The only notice given by the account was for sums of money paid by the defendant to the plaintiffs; and, in such a state of case, although the defendant was not confined in his evidence to the exact sum claimed as having been paid, and might have shown a less sum, yet it was necessary for him to show that money was actually or substantially paid to or for the plaintiffs. The statute entitles the plaintiff to notice of the nature and particulars of the claim to be offered as a set-off, in order that he may be prepared, if he can, to show its invalidity. Hutch. Dig. 847, § 61. And it is plain, that any evidence, the nature and particulars of which were not sufficiently stated in the account filed, to give the plaintiff such notice as would enable him to prepare for his defence against the claim set up, would operate to his surprise and prejudice, and is within the prohibition of the statute. And we consider the evidence under consideration, of this character.

Again, it is insisted that the court erred in admitting the letter of Jones, one of the plaintiffs, which was offered by the defendant to prove that the plaintiffs had received about the sum of six thousand dollars, for cotton belonging to the defendant's firm, shipped by the plaintiffs to New Orleans.

The substance of this evidence was, that the plaintiffs shipped to

New Orleans upwards of two hundred bales of cotton belonging to
Kurtz & Co., upon which the sum of about $12,000 was advanced
in New Orleans, of which sum Jones received about $6000 for
Kurtz & Co., and that the other $6000 were at first placed to the
credit of Jones, on the plaintiffs' books, but by his direction, that
this was afterwards corrected, and the sum was placed to the credit
of Kurtz & Co., and that that amount of money was raised by the
plaintiffs on account of Kurtz & Co.

The admission of this evidence was objected to by the plaintiffs,
on several grounds, which we will proceed to examine.

It was first objected that the statements of Jones were incompe-
tent, because he was interested in favor of the defendant. But he
was one of the plaintiffs in the action, and he was certainly as much
interested that the plaintiffs should recover as that the defendant,
who was his partner, should pay the money demanded.

It was further objected that the written statement offered, re-
ferred to a letter written by his copartner, Curry, stating that the
sum of $6000, received by their firm, had been applied to the credit
of Kurtz & Co., as directed by Jones, and that the statement could
not be read without the production of that letter. There is no
force in this objection. The statement clearly and positively
showed that the sum of $6000 had been received by the plaintiffs'
firm on account of the cotton of Kurtz & Co., and they were
thereby chargeable with the amount, unless they showed a legal
appropriation of it. But the declarations of Jones, a partner and
co-plaintiff, were sufficient to show the receipt of the money by the
firm, apart from any statements of Curry upon the subject; and
he was competent to direct to whose credit it should be placed on
the books of the firm. He states positively that he directed it to
be placed to the credit of Kurtz & Co., and not to his own credit,
and shows clearly that the fund was the property of the firm of
Kurtz & Co., and should have been so entered; and whether so
entered or not, the plaintiffs were accountable for it as the money
of the defendant's firm.

Again, it was objected that the money shown by Jones to have
been received for cotton by the plaintiffs, was not admissible as a
set-off under the pleadings. The sum stated in the account filed
with the plea of payment corresponds with that proved by the

witness to have been received by the plaintiffs for the defendant's firm ; it was received in money, as stated in the account, and was sufficient to give the plaintiffs notice of its nature; and being all received in one sum, it was unnecessary to state further particulars. It was sufficiently full and specific to enable the plaintiffs to come prepared to contest it.    This objection is, therefore, untenable.

The last objection to this evidence was, that the plaintiffs' firm was dissolved when the statement was made, and that it was incompetent for Jones to make admissions binding the firm after its dissolution.

It appears that the statement relates to acts done in the course of the business of the firm before its dissolution; and with respect to such transactions, the doctrine appears to be well settled, that declarations of a partner made after dissolution, in relation to facts which took place before the dissolution, in the regular course of business of the firm, and not creating a new liability, are admissible.    3 Kent's Comm. 51 (7th edit.) ; 1 Greenl. Evid. § 112, and cases there cited.    And especially is this the case, when the declarations are made by a partner who is also a party to the suit in relation to the subject-matter of which the declarations are made. This objection is, therefore, untenable.

The next ground of error taken, is the refusal of the court to grant a new trial, upon the affidavit of the plaintiff Curry, stating that he was taken by surprise by the introduction of the statements of his co-plaintiff, Jones, and by the ruling of the court in excluding the bills of exchange offered in evidence in behalf of the plaintiffs.    Upon the first point it appears that upon a former trial in this same cause, similar statements of Jones, in relation to the receipt of the sum of $6000 by the plaintiffs, on account of the cotton of Kurtz & Co., had been given in evidence.    It could not, therefore, be said that the plaintiff should not reasonably have anticipated that the declarations of Jones would be offered upon this trial, and by the proper care and attention he should have come to the trial prepared to meet that evidence if he could do so. Besides, Jones was not a mere witness, but a party to the suit, whose declarations, for aught that appears in this action, were made against his interest.    We do not think that, under these circumstances, a sufficient case of surprise is shown to cause the ver-

Curry, Dismukes & Co. v. Kurtz.

dict to be set aside on this ground. Much less is the exclusion of the bills of exchange sufficient for that purpose. If the ruling of the court was right upon the point, it was because the plaintiffs had failed to come prepared with the proper legal evidence to authorize the admission of the bills in evidence; and they cannot be permitted to set aside the verdict because of their laches. But in addition to this, the affidavit contains no showing that upon another trial, they would be able to make the proof necessary to admit the bills in evidence, or otherwise to establish the claim.

It only remains to consider whether the erroneous ruling of the court, in excluding the draft to Jones, offered by the plaintiffs, and in admitting the accounts of sales and memoranda of cotton offered by the defendant, are sufficient ground for a reversal of the judgment, and for awarding a new trial.

It appears by the record, that the jury found for the defendant, and returned a certificate of indebtedness in his favor against the plaintiffs for $2734, which, however, was remitted by the defendant in the court below. This result could not have been produced, except by allowing the defendant's claim of $6000 for cotton, received by the plaintiffs, on account of Kurtz & Co.; and it must, therefore, be taken that the jury gave credit to the statements of Jones, and considered that the plaintiffs had received that sum of money for the defendant's cotton. Deducting from that sum the amount due upon the draft of Jones, which was improperly excluded, there would remain a much larger balance due the defendant than was found by the jury. But it is probable that the jury allowed the $6000 to the defendant; and, under the evidence offered by the plaintiffs, of acknowledgments by the defendant of the correctness of the plaintiffs' claim, that they allowed all of the plaintiffs' account, except the charges for draft paid Banks $1036, which was shown to have been paid; $51 80, shown, by Buck's deposition, to have been improperly charged, and $75 shown to have been paid. The aggregate of these sums, deducted from the sum of $6000, due the defendant for money received on cotton, would leave about the amount for which the jury found their verdict for the defendant. And in this view the verdict would be justified by the evidence.

It is manifest, from the evidence and the instructions given by

the court to the jury, at the instance of the respective parties, that the case depended mainly upon the weight to be given to the declarations of Jones, respecting the indebtedness of the plaintiffs, for cotton received for the defendant, in view of the bias which he may have had from his peculiar relation to the parties to the suit, or from feelings of interest in favor of the defendant. That question was fully submitted to the jury by the instructions, and their verdict is conclusive of his credit for the purposes of this suit, and the plaintiffs' indebtedness for the $6000 must be considered as established. If this be so, in any proper view that can be taken of the case, the verdict is correct, and should not have been disturbed.

But if there was any error in calculations, in not allowing the plaintiffs some or all of the charges in their account, it is manifest that, assuming the allowance of the sum of $6000 to the defendant as correct, there was still a balance due the defendant; and yet the sum found for the defendant is remitted. There can, therefore, be no ground of complaint against the judgment, if the verdict was correct, in relation to the credit due to Jones's declarations; and upon that point it is conclusive.

Upon consideration of the whole case, we perceive no just ground for setting aside the verdict and reversing the judgment. Judgment affirmed.