CHARLES A. PIPES et al. *v.* E. E. NORTON, assignee.

1. "BILL OF PARTICULARS"—WHAT IS SUFFICIENT.—In an action on an open account, it is not sufficient to file with the declaration merely a statement of the amounts of invoices or bills rendered, but there must be a copy of the account sued on, showing the items which compose it.

3. SAME—ACCOUNT STATED.—Were the action upon the account stated, such a bill of particulars would be sufficient; for in that case the basis of recovery is a new promise.

2. CASE CITED.—Moody v. Roberts, 41 Miss. Rep. 75, is cited, as furnishing the rule of action on the subject to which it relates.

4. EVIDENCE—IN ACTION TO RECOVER MONEY PAID ON DRAFTS, OR NOTES, THEY MUST BE PRODUCED, OR ACCOUNTED FOR.—In an action to recover money paid upon drafts or notes, they should be produced upon trial, or their destruction or loss proved.

ERROR to the circuit court of Adams county. ALDER-SON, J.

This was an action of *assumpsit* for goods sold and delivered, money lent and advanced, money paid and interest, by defendant, in error, assignee in bankruptcy of Richard Nugent, against the plaintiff in error. A trial, verdict, and judgment for $1,174, amount demanded and interest, were had in August, 1870, whereupon a motion was made by plaintiff in error, for new trial, which was overruled, and bill of exceptions filed, and writ of error sued out to this court.

The defense was *non-assumpsit*. To the declaration, when filed, was annexed an account, as follows :

" Messrs. C. A. & J. PIPES, Natchez :
" In acc't current with estate R. NUGENT, bankrupt."

And including, as here written, the following items :

1860:
Dec. 22, To invoice per Quitman, $98,20 and frt. $3 00 ................$101 20
1861.
Feb. 9, To draft for Keep & Caulfield............................... 168 00
Feb. 20, To draft for S. W. W. Sanderson........................... 130 40
        To invoice per Citizen of Madison........................... 280 50
March 6. To draft for D. Metcalf................................... 51 57
July 18, To invoice per Vicksburg.................................. 65 71
Sept. 3, To invoice per Mary F.................................... 70 68
Oct. 5, To invoice per La Fourche................................. 52 00
1862.
Feb. 8, To invoice per Natchez.................................... 160 42

To prove the account at the trial, the deposition of Richard Nugent was offered, when counsel of defendants below, objected to the admission of the deposition, or any evidence to prove the foregoing items, upon the ground that the several invoices mentioned, should have been annexed to the account, or the items thereof written out in the account, and that the drafts mentioned should be produced for any evidence thereof. The objection being overruled, the deposition was then read.

The witness testified, that during the period of the account, he was a factor and commission merchant at New Orleans, and had the dealings with defendants (below) mentioned in the account. Sold and shipped to defendants the supplies mentioned, upon their order, at their several dates, and paid the cash mentioned upon their drafts at the dates stated. That " the accounts were duly rendered to the defendants at the dates on which the different items are charged, and the general account rendered to them several times, and that they never objected to any part or item of the account, either specially or in the aggregate."

The motion for a new trial was upon the ground, " that the court erred in overruling the objections ; that the paper filed with the declaration is not a bill of particulars, as required by the statute, such as gave defendants notice of the character of the claim, so as to enable them to make their defence, and in case of judgment be able to plead the same in bar of another suit, (refers to items above mentioned as subject to the objection,) and closed in admitting testimony to prove the same, and in allowing plaintiff to prove by parol, the payment of drafts named in the account without their production."

*W. & J. R. Yerger,* for plaintiffs in error.

The first assignment of errors seems to be well taken. The statute declares that on sustaining a demurrer to a

plea, the judgment shall be *respondeat ouster*.  This was the judgment in this case.  But before plea filed, and without taking judgment by *nil dicit*, the court proceeded to try the case upon the first plea.  The statute directing a judgment of *respondeat ouster*, is substantial, and must have some force given to it.  Otherwise the legislature would have not made the provision.  After such judgment is made, the case is not fully at issue, unless the defendant pleads over, and issue is formed thereon, or unless he declines to plead and waive the right to plead over, and relies upon the plea previously pleaded, and the record must show these facts.

This court has held it to be error, to go to trial upon the plea of non-assumpsit, when there are special pleas in bar interposed, to which there is no replication, and on which there is no issue, and the rule is stronger in favor of the defendant, where the judgment of *respondeat ouster* has been entered, and no plea under it or waiver of the right to plead.

2. The second and third assignment of errors may be treated together, as they involve the question of error, in admitting Richard Nugent's deposition to prove the payment of money on the drafts of defendants, without producing the drafts, or showing that they were lost or destroyed, and could not be produced.  Also, in permitting proof of the account without a specification of the items of which it was composed.

The statute declares that in suit upon an account, the plaintiff shall file with the declaration an account specifying the items of which it is composed.

This is done in order that the defendant may be apprised of the nature of the demand or claim sued upon, in order to defend, by showing that the account was incorrect, and rebutting evidence touching it.  In order to be able to defend, it is necessary that the items of which the account is composed, should appear specifically, otherwise no purpose will be subserved in filing

the account. Unless the account directs the attention of the defendant to the items claimed, he will be unable to make any defence, or to know what is the particular claim demanded of him. A general change in the words of this account, " to invoice per city of Madison," etc., in nowise enables defendants to know what particular thing or goods plaintiff thus claimed to have furnished, and thus they can make no preparation for defending against it, by showing either that they did not authorize such a change, or receive the articles for which payment is demanded.

But the error in permitting proof of the payment by Nugent, of drafts drawn by defendants, without producing the drafts, or showing that they have been lost or destroyed, and therefore could not be produced, is still more manifest.

No rule is clearer than this, that no party can maintain a suit as holder of a draft or note against the maker or drawer upon the draft itself, without producing the note or draft, or accounting for inability to do so, by showing loss or destruction, and proving that the draft once existed. And the rule certainly held with equal or greater force in action by a drawee or acceptor, to recover for money paid.

*Prima facie,* the drawee or acceptor is the party primarily liable. The draft is drawn upon the understanding or presumption that the drawee has funds of the drawer in his hands. As between the drawee and drawer, the fact may be shown to be otherwise, and that it was drawn and paid for ˙the accommodation of the drawer. But to enable an acceptor to recover against the drawer for money paid, under such circumstances, he must .show first, that he paid the draft of the drawer. Second, that he paid it out of his own funds, and for the accommodation of the drawer. In such case, the best evidence of the payment is the production of the draft itself. This is necessary, that it may appear that the

draft has been in fact paid, that it is not outstanding un-
paid in the hands of some third party, by whom the
drawer could be again sued, and that the drawer may
be able to see that it is his draft which has been in
fact paid. It is not absolutely necessary that the draft
should be produced; but if not produced, as it is the best
evidence, secondary evidence is only permitted where
the inability to produce the draft is shown, and evi-
dence is made that it in fact once existed.

But the testimony in this case falls far short of en-
titling plaintiff to recover, because Richard Nugent
does not show in his deposition that the payment made
by him was made for the accommodation of defendants,
or that he did not have their funds in hand sufficient to
enable him to make the payment. He must not only
prove that he paid the draft, but that he paid for accom-
modation and without funds, and there is no such proof.
A new trial should have been granted for want of suffi-
cient proof, both of the payment of the drafts, and that
the payments were made for accommodation and with-
out funds.

A drawer or an acceptor has a right to refuse pay-
ment of a bill, unless it is delivered up to him ; and he
is entitled to it, that he may use it as a voucher in his
accounts with the drawer, and may not be called upon
a second time for payment. And thus having posses-
sion of the voucher, the drawer, when he settles with
him, has a right to inspect the voucher, to see that it is
paid, and that it is a genuine bill ; and when sued in *as-
sumpsit* by the acceptor for money paid, *a fortiori*, he
has a right to call for the voucher, for the purpose of
inspection, and to be assured by the best evidence, the
production of the bill itself, that it has been paid.
Proof of payment without producing the bill, unless it
be shown to be lost or destroyed, is not the best evi-
dence that can be adduced, or which the drawer, when
sued, is entitled to demand.

*W P. Harris*, for defendant in error.

The first error assigned, is clearly not well taken. There was a plea to the merits, on which issue was taken. The two special pleas demurred to were disposed of by the court, and judgment *respondeat ouster.* The defendants failed to plead over so far as appears, and voluntarily went to trial, without objection or tender of pleas.

The second assignment, to wit : that the bill of particulars is not sufficiently specific, is so fully discussed by Messrs. Winchester & North, that it does not need additional argument.

The court of errors and appeals in McLaughlin v. Shaugnessy, 42 Miss., held that the item, " carpenter's work, $800," was sufficiently definite.

The term invoice, means, of course, an invoice of goods. " To amount of invoice of goods shipped by steamer Quitman."

All commission merchants' accounts are thus made out, according to custom. The bill of lading and invoice are forwarded to the customer, and the entry in the book is an item described as invoice per steamer, and of a particular date.

The statute applies to the *indebitatus assumpsit,* which being in the most general terms, would not admonish a defendant of any single particular by which he could know the ground of action.

These accounts, such as is here sued on, are the accounts usually rendered to the party, he having the bills of lading or invoices. The deposition proves that these accounts were rendered, and it is going too far to say that the account which points to the time and the steamer, and the amount of the account, is faulty, because each item of goods is not set out in detail.

The chief stress is put by the learned counsel for the plaintiff in error, on the non-production of the drafts paid, being the best evidence, etc.

The counsel relies upon rules established where a

special action is brought on the draft by the acceptor as such against the drawer, and the possession of the draft relied on as evidence of title, or claim to the holder.

The case before the court, as an action for money paid, and the nature of the proof was that the account had been rendered or sued on and admitted to be correct.

" The accounts were duly rendered to the defendants on the dates on which the different items are charged, and the general account was rendered them several times, and they never objected to any part or item of said account, either separately or in the aggregate, to me or to any one in my employ."

This is evidence of a stated account, an account rendered and admitted to be correct by acquiesence, according to settled commercial usage and law. And the law so declares it, and it is not necessary to offer any further proof. It matters not on what the items of account are founded, whether on written contracts, sealed instrument, or any other matter or thing. 12 Johns. 227; Bartlett v. Emory, 1 T. R. 42; 2 Greenl. Ev. §§ 126, 127, pp. 105, 106; 10 Wall. 129.

The witness obviously means by the general account, the account sued on. That was several times rendered, and no word of dissent ever expressed. This silent acquiesence constitutes the highest evidence of the request to pay money, and dispenses with the production of proof to show a draft, order, or verbal request to pay. 14 Johns. 378; 2 Greenl. Ev. § 108, p. 85.

It will be seen from these authorities that the draft, order, or request to pay, where payment is actually proved, is regarded only in the light of evidence of a request to pay, in actions for money paid. Their production is not essential, if it be admitted they have been paid.

Where a suit is brought on the draft or bill, and possession is relied on as evidence of title as holder, or as *prima facie* evidence of payment, the draft is required

to be produced or accounted for, but where the defendant admits payment of the draft in the action for money had and received, by receiving the account and not objecting, or by a direct admission, no other proof need be offered.    This is elemental doctrine.

The object of rendering an account is to adjust it.    It is an inquiry.    " Is this account correctly stated ?"    If admitted to be correct, it matters not of what items it may be composed, whether of drafts paid, or goods sold. No other evidence save the rendering and admission can ever be demanded in any controversy respecting the account.    The precise object of rendering an account is to have it examined, to correct it, if wrong, and to adjust it so that it will not be necessary to produce evidence of a multitude of items.    It is a droll suggestion indeed, that after an account has been rendered and admitted, the party is still at liberty to demand proof of the particular items.

The attention of the court is not called to this feature of the deposition, by plaintiff's counsel.    There is in it that admission of liability to pay which dispenses with any further proof—dispenses with the production of the drafts or any explanation of their whereabouts.

The doctrine that, when I admit that A. paid my draft drawn on him, I can still defeat a recovery, because he does not produce the draft on trial, is one not found in any book printed, to my knowledge.

Judge Yerger's doctrine is wholly inapplicable to stated accounts, or to an account chargeing payment of drafts, admitted to be correct.

How can the party be in peril when his draft has been presented by the holder and paid by the drawee ? Are we to go upon the incredible hypothesis that the drawer paid it and put it in circulation after due, or took no receipt, or that the drawer may be made liable without demand and protest ?    Judge Y.'s general proposition that no one can sue as holder of a draft, on

the draft itself, without producing it, is not applicable where the action is for money paid and admitted. The admission cures everything, both draft and payment out of drawee's own funds.

If it be said that the rule of evidence here relied on would apply only where there was a common count, or account stated, which is often added, the reply is that evidence of account rendered, and totally admitted, is admissible under the other counts, and its conclusiveness as evidence the same as if introduced under the account stated.

The rules of the law of evidence make any distinct acquiescence in the correctness of an account whether for money loaned, money paid, or for goods, wares and merchandise, evidence under these common counts. The fact that such evidence also proves an account stated cannot vary the case. Certainly it has always been held that an express admission of the correctness of an account is evidence under any count in a declaration which seeks to recover on an open account.

Generally, under counts for money paid, it is necessary to prove a previous request by words, or by draft, or order written, yet in these cases it is sufficient to prove under a count for money paid, that account was rendered and no objection made. See 2 Greenl. Ev. p. 90, § 113 ; 2 ib. pp. 83, 85, § 107, 108. See also, under the head of admissions, as applicable, generally, to any demand for money, 1 ib. 237, § 197, especially at the close of the section.

Wherever an admission would be evidence of the correctness of an account, the implied admission by acquiesence is evidence of its correctness.

*Winchester* v. *North,* on the same side, Filed an elaborate argument, too long for insertion.

TARBELL, J. :

· The declaration is in the usual form of *indebitatus assumpsit* for goods, wares and merchandise, sold and delivered, and for money paid, laid out and expended. Plea: *Non assumpsit.* . The claim, according to the declaration, was upon an open account. Upon the trial the defendants objected to proof of the account sued on, under art. 90, Code, 492, which provides that "there shall be annexed to, or filed with the declaration in every case founded on an open account, a copy of the account or bill of particulars of the demand ;" and, that "no evidence thereof shall be given on the trial, unless so annexed or filed," the defendant insisting that the particulars furnished were insufficient, and that the drafts upon which the money was paid, should be produced upon the trial. The objection was overruled, and verdict and judgment followed for plaintiff. From this judgment, the defendants below prosecute this writ of error.

The bill of particulars, filed with the declaration, consisted of items, of which the following are selected by way of illustration, to wit : " To invoice, per Quitman, $98 ;" " To Draft, per Keep & Caulfield, $168 ; " etc. Neither the original books of account of· the merchant, nor the drafts mentioned in the account filed, were produced on the trial. The deposition of the merchant is the only evidence sent up with the record, or was, we suppose,.the only evidence offered. The testimony of the merchant is, in substance, that he had previously rendered bills of items of the account sued on to the defendants, to which they had made no objections, showing, if uncontradicted; an account stated, between the merchant and his customers, the defendants. The effort of counsel was, on the trial, as here, to sustain the statement filed with the declaration, as a sufficient compliance with the code.

As to the argument drawn from the common law,

upon this subject, we observe that adjudications and rules of practice, where bills of particulars are rendered in obedience to judges' orders, as at common law, are, to a great extent, inapplicable here, because there the party could obtain another order for a further and more specific bill, or, neglecting to require a further bill, he was not then permitted to complain on the trial, provided the bill served afforded a reasonable and substantial notice of the cause of action, and subject matter of defense; and for the reason that the party had his remedy by an order for a more particular bill. Such were the cases of Goodrich v. James, 1 Wend. 289, and of Barnes v. Hernshaw, 21 ib. 426, cited by counsel. In the former, which was an action of *assumpsit*, for goods sold, this item occurred: "Goods sold the defendant as per account rendered, $80." This was held sufficiently definite by the supreme court of N. Y., but, for the reason that it gave the defendant notice of the nature of the claim against him, and if not satisfied with it, he should have applied, say the court, for an order for further particulars, before the trial. In the latter, the defendant on the trial, objected to evidence of the plaintiffs claim because of the generality of the bill of particulars, but it was held on error, that "the trial is not the place at which an objection for too great generality in the bill can be made." And this view is enforced in a variety of expressions, through a somewhat lengthy opinion, in the course of which the court say, "If the party calling for the bill, thinks he has not been fully informed, or desires further information," a judge may suspend the proceedings, and at chambers look into the matter, and require the party in default to give such further information of particulars as may be reasonably required, and it is in his power to give. That is the place for trying the sufficiency, in other words, the fullness and particularity. Whether the party has gone as far as he is able in his statement,

may be one question. Extrinsic circumstances are to be looked into. Therefore, the question on fullness is one which cannot be determined by the judge at the trial. He cannot know intuitively, what story the party supposed to be in default, could have told about his cause of action, with safety to his ulterior course in the cause. If the bill was insufficient, therefore, it should have been objected to, at least before the trial ; and, indeed, before the party objecting took another step in the cause. If a party go on or lie by an unreasonable length of time, he waives all objections on account of the defect." The English rule is thus stated : "The party who objects to the particulars as insufficient, must make his complaint at the proper time. He cannot wait till the trial of the cause, and then raise an objection, which, if earlier made, might have been disposed of." Ch. J. Gibbs, in Lavelock v. Cleveland, 1 Holt's Cas. 552. In Pierce v. Craft, 12 John. 90, the action was *assumpsit*, and the declaration was on the money counts. Plea, *non-assumpsit*. On the trial the plaintiff relied on two promissory notes for value received, to which, as evidence, the defendant objected. After disposing of several points, the court say, "another objection is, that the general form of action subjects the defendant to unfair surprise," but to this it was replied, "the defendant may always protect himself against surprise, by demanding a bill of particulars." Hence, upon the trial, an objection to a bill of particulars for want of particularity, was not, under the common law practice, received with favor, and so, a bill giving a party fair and reasonable notice of a demand or set-off, was held sufficient, although, upon demand of a judge at chambers, a more particular bill would have been ordered.

If we have correctly developed the common law practice and doctrine, it follows that the old precedents afford no certain criterion in the determination of the

requirements of a statute like ours.  A party filing a bill of particulars, does so at the risk of having proof of his claim rejected, if his bill is wanting in fulness. There is no authority to appeal to a judge at chambers to settle the point in advance of the trial, and the party ought to conform to what is frank, honest, and in good conscience.

There is also another material difference between the practice at common law, and under our statute.  By the former, an account rendered may be referred to in a bill of particulars, as previously delivered, the bill giving the footings only, whereas our statute requires the bill of particulars to be "filed with the declaration."  It would clearly be insufficient and evasive to file with a declaration on an open account, the aggregate of such account only, referring to particulars theretofore rendered for further information.

A further argument in support of our view, may be drawn from the language of the statute, which enacts, that, when the action is upon an "open account," a "copy of the account" shall be filed-as a bill of particulars, with the declaration.  The suit at bar is upon an "open account."  According to the statute, there should have been filed "with the declaration," a "copy of the account" sued upon, whereas there was filed merely the amounts of invoices, or bills rendered. Were the action upon an account stated, this bill of particulars would have corresponded therewith, for in such case, the nature of the action, the issues and proofs are all somewhat changed, the basis being a new promise.  Although portions of an account stated may be contested, yet the items thereof, *in extenso*, need not be given in evidence, and consequently, the bill of particulars may conform to the nature of the action.

The history of legislation upon the subject under discussion, affords a further illustration of our views.  As is well known to the profession, the general mode of de-

claring and pleading at common law, in cases within
the common counts in *assumpsit*, was open to, and in
fact, resulted in very great abuses, so that the injustice
and oppression practiced upon parties produced com-
plaints, followed by legislation looking to a more
specific statement of causes of action and defense, more
particularly with reference to open accounts and notes.
Legislation of this character has taken place in every
state in the Union, with a like purpose.   In the begin-
ning of such legislation, in every instance probably,
but slight modifications and restrictions upon the com-
mon law practice have been imposed, but subsequent
enactments have effected a radical and complete change.
The history of this legislation in Mississippi, is the
same substantially, as in all the other states, and is
illustrated by the statutes of 1822, 1850, 1857 and 1871,
the latter, § 580, Code of 1871, admitting of no ques-
tion of its intent.   As a part of this general system of
legislation compelling parties to a more definite state-
ment of their cause of action and defense, with a view
to obviate complaints of surprise and injustice under
the old system of general pleading, actions upon notes
and all written instruments, as well as the action of
ejectment, have been regulated by statute requiring a
copy of the writing, in the one case, and a statement of
the title in the other, to be filed.   The statute of 1822,
required the plaintiff's demand or defendant's set-off to
be so particularly described in the pleadings, or bill of
particulars, as to give the opposite party "full notice"
of the character thereof only ; so that adjudications
under that statute afford little aid in the construction
of the statute of 1857.   The statute of 1850 need not
be reviewed, and the provisions of the Code of 1857
have already been given.   The Code of 1871, § 580,
provides that "where an open account is sued on, there
shall be filed with the declaration, 'before process
issues,' an 'itemized' copy of the account sought to be

recovered, and if this be not done, plaintiff shall not be permitted to give evidence in support thereof." Thus, the legislation in this, as in other states, has steadily tended to greater exactness in pleadings, or a more definite statement of the cause of action, as a reform of uncertain, unmeaning, indefinite generalities.

There is another consideration affecting alike the bill of particulars and the mode of keeping the books in this instance. It is not, certainly, according to the authorities and reason, the most approved method of entries in books of account. We can well conceive, that in keeping books of account, by entering only the aggregate of "bills rendered," there are far more serious objections to the books of a merchant thus kept, than to those of a mechanic. Suppose a merchant and a mechanic each charge in their respective books against a customer, the one, "goods as per bill rendered, $75," and the other, for "labor and material furnished, $75." In the former case, the aggregate may be made up of a thousand different items, which are contained in a variety store, and constitute the wants of a family, and a planter, or a mechanic, including dry goods, groceries, hardware, dress goods, crockery, kitchen ware, mechanic's tools and farming implements. If the bill be lost, omnipotence alone, could give the items, and thus mistakes, whether accidental or intentional, could never be detected and corrected. In the case of the mechanic, however, experts by knowing the particular job performed, or the character of the work, might approximate, with great accuracy and certainty, the labor and materials necessary to its performance. We do not impugn the books in this case, nor question them as evidence, but this objection seems to be a serious one to the bill of particulars, and to the mode in which the accounts were kept, as a rule, which, to some extent, confirms our general view of this branch of the

case, that as an action in form upon an open account, the bill of particulars is insufficient.

On the other hand, a custom of merchants, as to their mode of keeping and rendering accounts, is invoked as providing a rule in this case. We are not informed of any such usage. None is in evidence. The adjudications define the most approved methods of bookkeeping; and the entry of items is enforced in numerous cases. A single item, by a mechanic, thus, a bricklayer's charge of "190 days work," was rejected; as was this: "thirteen dollars for medicine and attendance," by a physician. The laws of Texas require an account to be kept by items, and in 5 Texas, 343, a single charge, stating the aggregate, "as per bill rendered," was questioned "upon principle." "Inovice" is a well understood term, and signifies only a written account of the particulars of merchandise shipped to a purchaser, factor, or consignee, with the value or prices and charges annexed, but implies no custom. An "invoice" of goods, is merely another term for "bill rendered." In this case it means only, that the merchant had rendered to his customer, before suit, an itemized statement of the account against him. This, however, is not in compliance with art. 90, Code of 1857, p. 492, nor with the Code of 1871, sec. 580.

While thus holding with reference to the contents of the bill of particulars, we do not hold that in an action upon an open account, the amount due cannot be established by an implied admission of the correctness of the account sued on, and that such implied admission may be in the mode understood, by the term, "stated account." A sufficient bill of particulars being filed with a declaration upon an open account, proof of a prior delivery to the defendant of the items of the account sued on, which the latter held for some time without objection, creates an "account stated," and involves an admission by implication of the plaintiff's demand; 25 Miss. 267; 26 ib. 212; but such is not the case at bar, in this, that the

bill of particulars is insufficient under the common counts. The simple and consistent solution of this case, within our view, required only an amendment of the declaration by adding an *insimul computassent* count to which the present bill of particulars would have been appropriate; or an amended bill of particulars, stating the items of the account claimed. The plaintiff made his own case and summoned the defendant to respond thereto. As the case was thus made, the several items of the account sued on were open to litigation, and the code required the plaintiff to file a copy thereof with his declaration, imposing as a penalty for a failure to comply therewith, a forfeiture of the right to give evidence of the same. The defendant, as we may suppose, responded to the case presented by the plaintiff, and on the trial objected to the evidence offered, for the reasons stated. No offer was made or leave asked to amend complaint or bill. Thus stood the case when the objection to the testimony was overruled. The account itself is not filed under an *insimul computassent* count, as a balance admitted to be due the plaintiff as upon account stated; but the complaint, upon an open account, concludes with an averment that the plaintiffs " annex to this complaint, as a part thereof, an account and bill of particulars of said several sums of money." The bill of particulars is headed, " Messrs. C. A. & J. Pipes, Natchez, in account current with Est. R. Nugent, bankrupt." And then follows the statement, " to invoice per Quitman, $98 ; " " draft per Keep & Caulfield, $168." And several others like these. As a bill of particulars to a declaration upon the common counts, it is, upon its face, wholly insufficient.

It is true, that at common law a promissory note, if given " for value received," is evidence under the money counts, as an admission of the amount due. So under the common counts, with a proper bill of particulars, according to the form of the action, an implied admis-

sion by the reception and retention, without objection, of an account rendered, would be evidence of the sum due, and thus a stated account might be said to be evidence under the common accounts, but as already stated, the objection in this instance is preliminary to the proof for a non-compliance with the statute, whereby the right to give evidence is denied. The classes, or divisions of implied *assumpsit* stated by Blackstone, and repeated by Tidd, have been followed in practice, and are observed at the present time.

Another question, arising out of the testimony sent up with the record, will naturally be raised upon another trial, *to wit :* whether the books of account of the witness Nugent should not be produced in court in support of the plaintiff's action. In answer to the fourth interrogatory, the witness, Richard Nugent, states in his deposition, as follows,: "My bookkeeper, at the time referred to, was David Thomas, who has since died. I know the annexed paper, marked 'A' is a correct copy of the original items in my books, which I know were correctly kept. I believe said paper to be a correct copy or transcript of the original accounts in books, which I know were correctly kept." In Moody v. Roberts & Co., 41 Miss. 75, the court say, "A custom has grown up in some parts of the state, which seems to have been followed in the present case, of giving in evidence copies of accounts, proved by witness to have been correctly transcribed from the books, and this course derives some support from the language of the court in the several cases of Hazlip v. Legget, 6 S. & M. 306; Simmons v. Means, 8 ib. 397, and Moon v. Joyce, 23 Miss. 584. But there does not seem to be any sound principle upon which such a practice can be sustained. It is going quite far enough to permit the original book itself, after being inspected by the court, and subjected to the scrutiny of the opposite party, to go as evidence to the jury, and in no

other way can the credit due to such testimony be properly estimated."

With reference to the money portion of the plaintiff's demand it is suggested, in argument, by counsel, that the suit is "not founded upon any negotiable subsisting security or other writing." As a matter of fact, there is no description in the record of these "drafts," upon which the money is stated, in the bill of particulars, to have been paid. Whether they were letters, mere "orders" of the simplest form, or formal bills or drafts, known as such by the business community, does not appear. Upon this point the record is silent. In the absence of testimony, we must presume the term "drafts" found in the account filed, was used in its highest commercial sense, and consequently, that the money sued for was paid upon "negotiable, subsisting security, or other writing," or "drafts."

In support of the argument, very strenuously urged, that upon the evidence in this case, it was unnecessary to produce the drafts on the trial, we are referred to Curry, Dismukes & Co. v. Kurtz, 33 Miss. 24; and to Keene v. Meade, 3 Pet. 7. In the former, the rule of law requiring the production, upon the trial, of drafts paid by a plaintiff suing to recover the money advanced thereon, or such an identification thereof, and their absence so accounted for, that a judgment for the money would bar a future action on the drafts, is explicitly affirmed. In that case, as in the one before us, the plaintiff sought to recover money paid upon drafts, without accounting for, identifying or producing them on the trial. The claim was rejected. In Keene v. Meade, which was an action for money had and received, the defendant had, on request, written "his name at full length" in the "rough cash book" of plaintiff, "not so much for the sake of the receipt, as in order for plaintiff to become acquainted with the signature" of "and the way of spelling his name" by

defendant. The payment of the money was fully proved. It was objected, however, that the cash book and signature of defendant should be produced, as the best evidences, but the court say, "The entry of the advance made by the defendant himself, under the circumstances stated, cannot be considered better evidence, within the sense and meaning of the rule on that subject, than proof of the actual payment. The entry in the cash book did not change the nature of the contract arising from the loan, or operate as an extinguishment of it, as a bond or other sealed instrument would have done. If the original entry had been produced, the handwriting of the defendant must have been proved, a much more uncertain inquiry than the fact of actual payment. It cannot be laid down as a universal rule, that where written evidence of a fact exists, all parol evidence of the same fact must be excluded. * * * The entry made by the defendant in the cash book was not intended, or understood, to be a receipt for the money, but made for a different purpose ; and even if a promissory note had been given as written evidence of the loan, the action might have been brought for money lent, and this proved by parol. The note must have been produced on the trial, not, however, as the only competent evidence of the loan, but to be canceled, so as to prevent its being put into circulation, a reason which does not in any manner apply to the present case." Of the necessity of producing bills and notes upon the trial, to be canceled, unless shown to be lost or destroyed, see 3 Phil. Ev., with C. & H.'s and Edward's notes, 4th ed. p. 157, *et seq.* and notes. If the absolute destruction be not proved, and the bill or note be not produced, such proof must be given, as shows that the defendant cannot afterwards be compelled to pay the amount again to a *bona fide* holder. Swift v. Stevens, 8 Conn. 431 ; 2 Stark. Ev. 142 ; 3 Phil. Ev., 4th ed. notes, 159. The

courts have, under various circumstances, allowed the
contents of a note to be proved, when not absolutely
destroyed, but only temporarily mislaid, or lost.   Ren-
ner v. Bank of Columbia, 9 Wheat. 581; Jones et al. v.
Fales, 5 Mass. 101; Lewis v. Petavin, 4 Mart. R. N. S.
4; 8 Pick. 278; 2 Fairf. 157; 12 Wend. 173.   It has
been held by high authority that a plaintiff cannot re-
cover on the original consideration, unless he shows
the note to have been lost, or produces and cancels it at
the trial.   Holmes et al. v. Camp, 1 Johns. 34; Bur-
dick v. Green, 15 ib. 247.   The doctrine seems to be
clearly deducible from the authorities, that to justify
recovery upon the original consideration, or second-
ary evidence of contents, in case the absolute des-
truction or loss of the bill or note be not shown, and it
be not produced on the trial to be canceled, such a state
of the facts must be proved, as will show that the de-
fendants cannot afterwards be compelled to pay the
amount again to a *bona fide* holder.   3 Phil. Ev., with
C. & H. & E.'s notes, 159, and notes; 2 Pars. Notes
and Bills, 285, *et seq.*, and notes.   It is the gene-
ral rule that when a drawer, maker or other party
liable on a bill or note, is sued thereon, he may
insist on the production of the instrument.   2 Pars.
Notes and Bills, 285.   And its absence, unaccounted
for, will furnish an adequate defense to the suit.   Ib.
286.   For the defendant is entitled to the note on pay-
ment thereof, as his voucher of discharge.   Ib. and
notes.   An acknowledgment of the debt, or even a
promise of payment, will not dispense with profert of
the note, nor release the plaintiff from the necessity of
accounting for its absence.   Ib. 287.   Because the
payor may not only ask to see the note in possession
of the party claiming payment, as evidence of his
ownership, but may also demand possession of the note
on his payment, as his best security against further
demand.   Ib. and cases cited in notes.   To these au-

thorities we add that of McLemore v. Hawkins, 46 Miss.

Our opinion, delivered on giving the judgment which was remanded to the docket, was substantially as follows: 1. That the bill of particulars filed is insufficient; 2. That the "drafts" mentioned in the. pleadings and evidence should have been produced on the trial, or their destruction or loss proved. The opinion was studiously limited to the specific points presented, carefully omitting all reference to the exceptions and qualifications arising out of a change of facts, leaving these to be developed in the future progress of the cause. We stated only primary rules, which might be modified, or superceded by a change of circumstances. The record before us furnishes no precise description of these "drafts"; whether they were negotiable, and are a subsisting security; whether sight drafts, and instantly paid; whether their negotiability was destroyed by payment or otherwise; whether in fact they were put in circulation, and are outstanding in the hands of strangers; whether the drawers have been exonerated, in fact or in law, from their payment; or whether in case of judgment in this action and its satisfaction, these defendants might not be subjected to a second payment on these drafts in the hands of third parties, depend upon facts not presented to us. The observations now submitted, therefore, will serve to enforce and illustrate, as well as to show the limited scope of our opinion rendered on a former occasion in this case, and its intended consistency with acknowledged rules of law. 16 Md. 208; 4 Barn. & Cress. 235; 4 Car. & Payne, 44; 10 Pick. 31; 6 Mass. 358; 21 Pick. 247; 4 Mass. 93; 4 Mich. 387; 5 Tex. 343; 11 Leigh, 471; 4 Gilem, 98; 2 Greenl. Ev. § 127; 1 Johns. 334; 2 T. R. 479; 3 Camp. 101; 3 T. R. 182; 2 Johns. R. 235; 10 ib. 418; 3 Johns. Cas. 5; 8 Johns. R. 79; 12 ib. 90; 7 Wend. 311; 15 Pick. 212; 4 Seld. 346; 2 ib. 19; 11

Pick. 315; 5 Maule v. Selw. 65; 4 B. Mon. 417; 1 H.
Bl. 242; 2 ib. 1269; Bayley on Bills, 286; 2 Str. 719;
7 Barn. & Cress. 416; 1 Salk. 283; 5 Barn. & Cress.
360; Chitty on Bills, (7th ed.) 366; 3 Hill, 53; 6 Barb.
445; 12 Pick. 399; 7 J. J. Marsh. 44; 1 Bibb. 492; 16
Ala. 742; 3 S. & P. 67; 10 Ark. 428; 24 Conn. 175;
19 ib. 383; 16 ib. 106; 1 Root, 384, 148; 1 Conn. 175;
2 ib. 697.

*The judgment is reversed, and cause remanded.*